DISTRICT OF OREGON, ss:        AFFIDAVIT OF CALEB MICHAUD

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Caleb Michaud, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been since December 2020.  My current assignment is HSI Medford, Oregon, where I am tasked with supporting the Medford Area Drug and Gang Enforcement (MADGE) task force.  My training and experience includes the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program located at the Federal Law Enforcement Training Center (FLETC), Special Investigations and Operations Course (SIOC), Oregon Narcotics Enforcement Agency (ONEA) conference, and International Narcotics Interdiction Association (INIA) conference.  I am a law enforcement Officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am authorized by law to conduct investigations and to make arrests for felony offenses.  Prior to becoming a SA with HSI, I served in the United States Army as an active-duty combat engineer for over ten years.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Jacob PERRY (hereinafter "PERRY") for Possession with Intent to Distribute, or Distribution of a Controlled Substance, to wit: Methamphetamine, Fentanyl, and Cocaine, in violation of 21 U.S.C. § 841(a)(1).  As set forth below, there is probable cause to believe, and I do believe, that PERRY committed the crime of Possession with Intent to Distribute a Controlled Substance, to wit: Methamphetamine, Fentanyl, and Cocaine, in violation of 21 U.S.C. § 841(a)(1).

/ / /

## Applicable Law

3. 21 U.S.C. § 841(a)(1)–Possession with Intent to Distribute a Controlled Substance: "It shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

## Statement of Probable Cause

### Central Point Case

4. On March 18, 2023, Central Point Police Department (CPPD) officers and community service officers responded to a residence in Central Point, Oregon ("Residence 1") for a report of a stolen vehicle.

5. While investigating the stolen vehicle, law enforcement encountered PERRY walking from Residence 1. The CPPD officer who encountered PERRY recognized him as an earlier driver of the stolen vehicle who had eluded law enforcement on March 3, 2023. When he approached law enforcement, PERRY tossed something into the bushes nearby.

6. PERRY was arrested and read his *Miranda* rights. PERRY was questioned about the stolen vehicle. PERRY was also asked about what he had thrown into the bushes. PERRY admitted that he had thrown drugs into the bushes. Law enforcement located two bags, one containing a black tar substance and the other containing a white crystalline substance. The black tar substance later field tested positive for heroin (0.9 grams) and the crystalline substance field tested positive for cocaine (6.9 grams).

/ / /

/ / /

7. Law enforcement also located additional drugs in a backpack in the stolen vehicle. Inside the backpack, law enforcement located a digital scale, packaging, suspected methamphetamine, and suspected fentanyl.

8. Law enforcement questioned PERRY regarding the drugs in the vehicle. PERRY indicated to law enforcement that the suspected methamphetamine was in fact methamphetamine and the suspected fentanyl was in fact fentanyl. The suspected methamphetamine was field tested and tested positive for methamphetamine (4.2 grams). The suspected fentanyl had a net weight of over ten grams. The drugs were sent to the Oregon State Police (OSP) Crime Lab. The OSP crime lab tested five items and found (1) a zip lock bag containing 5.87 grams of fentanyl (white in color, (2) a zip lock bag containing 3.26 grams of methamphetamine, (3) a zip lock bag containing 4.41 grams of fentanyl (multi-colored), (4) a zip lock bag containing 2.27 grams of fentanyl (pink), and (5) a zip lock bag containing 2.15 grams of fentanyl (pink). Based on my training and experience, I know over fifteen grams of fentanyl to be a dealer quantity of fentanyl.

## MADGE Case

9. On December 28, 2023, Jackson County Parole and Probation (P&P) Officers and Jackson County Sheriff's Office (JCSO) Deputies attempted to serve an arrest warrant at a residence in Central Point, Oregon (hereinafter, "Residence 2"). While at Residence 2, law enforcement located PERRY, who was not the subject of the arrest warrant, alone in a vehicle. Law enforcement further observed what appeared to be drug paraphernalia, in plain view, in PERRY's vehicle. Additionally, JCSO Deputies identified a 4X4 pickup truck parked next to PERRY's vehicle that JCSO Deputies knew to be reported stolen. Jackson County P&P officers

then called Medford Area Drug and Gang Enforcement ("MADGE") investigators and requested assistance with the investigation.

10. At approximately 1030 hours on December 28, 2023, MADGE investigators responded to the Residence 2 to assist JCSO and Jackson County P&P. MADGE Investigators spoke with PERRY, who admitted the vehicle he was found in belongs to him and his girlfriend. PERRY also told MADGE investigators that he had a user amount of fentanyl inside the vehicle. PERRY told investigators the drugs belonged to him, and his girlfriend did not know about the drugs. PERRY then gave voluntary consent to MADGE investigators to search his vehicle. MADGE investigators found approximately 12.5 grams suspected fentanyl, approximately 2.42 grams heroin, and 2.3 grams methamphetamine inside the vehicle. After testing at the OSP drug lab, the suspected fentanyl was found to be 11.36 grams of cocaine. Based on my training and experience, I know that a small amount of controlled substances must be placed into a reagent container to conduct a presumptive test. This accounts for the laboratory weight returning as approximately 1.5 grams less than the originally seized amount. I know from training and experience that 12.5 grams is more than a personal use amount of cocaine. A JCSO Deputy transported PERRY to Jackson County Jail. While with the JCSO Deputy, PERRY admitted to being in possession of the stolen 4X4 pickup truck.

### Jackson County Sheriff's Office Case

11. On June 13, 2024, two JCSO Deputies responded to the report of a suspected stolen vehicle sighting in Prospect, Oregon. The two responding JCSO Deputies located the suspected stolen vehicle, a gray Ford F250 (hereinafter, "Suspect Vehicle"), on Dam Access Road near Oregon Highway 62. Upon encountering the Suspect Vehicle, the JCSO Deputies

activated overhead lights and began giving commands to the driver in an attempt to stop the Suspect Vehicle.  Instead of abiding by the JCSO Deputies' commands, the driver of the Suspect Vehicle began to drive in reverse away from the JCSO Deputies.

12.	JCSO Deputies, who were in separate JCSO patrol vehicles, pursued the Suspect Vehicle into an open area where several civilians were also present.  Once the JCSO Deputies reached the open area, the Suspect Vehicle attempted to drive around the JCSO Deputies towards Highway 62.  One JCSO Deputy attempted to perform a Precision Immobilization Technique (PIT) on the Suspect Vehicle but was unsuccessful.  The Suspect Vehicle then struck the second JCSO Deputy's vehicle by accelerating rearward into the passenger side of the JCSO Deputy's vehicle, pulling forward, and repeating the process for a total of two intentional collisions.  Upon seeing this, the first JCSO Deputy intentionally drove his JCSO Patrol vehicle into the passenger-side of the Suspect Vehicle – pinning the Suspect Vehicle into large rocks on the driver's side of the Suspect Vehicle.

13.	Upon immobilizing the Suspect Vehicle, the same JCSO Deputy approached the passenger side of Suspect Vehicle, with his service pistol drawn, and gave commands to the driver to exit the vehicle.  At this time, the JCSO Deputy also identified a female passenger hunched over on the floorboard near the front-passenger seat of Suspect Vehicle.  Instead of complying with commands, the driver continued to attempt to accelerate Suspect Vehicle forward in vain.  Suspect Vehicle's tires were unable to gain traction, and instead spun in place.  The JCSO Deputy then deployed his taser on the driver; however, the driver still refused to exit Suspect Vehicle.  The JCSO Deputy initiated his taser (five seconds of electromagnetic neuromuscular incapacitation) two additional times before the second JCSO Deputy was able to

arrive and remove the driver from the vehicle.  Once removed from the vehicle, the JCSO Deputies identified the driver as Jacob PERRY.  The JCSO Deputies also identified the passenger as Adult Witness 1 (AW1).

14.  PERRY and AW1 were arrested and transported to the hospital, and once cleared booked into Jackson County Jail.  While at the hospital, a JCSO Deputy asked PERRY if there was anything in his car, to which he replied, "just drugs."  At Jackson County Jail, a digital scale was found in PERRY's wallet during inventory of PERRY's property.  JCSO seized the Suspect Vehicle and found the vehicle was reported stolen by Klamath County Sheriff's Office in April 2024.  JCSO obtained a Jackson County search warrant for the Suspect Vehicle, and the following day JCSO Deputies executed the search warrant.  JCSO Deputies located approximately 121 grams of crystal substance located in a duffel bag sitting on the bench seat between the driver and passenger seat of Suspect Vehicle.  Presumptive testing returned a positive indicator that the crystal substance was methamphetamine.  Also located were several (11) empty zip lock bags in the front passenger door.  I know, from training and experience, that 121 grams of methamphetamine is a dealer quantity of methamphetamine.  I know from training and experience that drug dealers use digital scales and zip lock bags to weigh and package controlled substances for sale.

## Conclusion

16.  Based on the foregoing, I have probable cause to believe, and I do believe, that PERRY Possessed with Intent to Distribute a Controlled Substance, to wit: Methamphetamine, Fentanyl, and Cocaine, in violation of 21 U.S.C. § 841(a)(1).  I therefore request that the Court issue a criminal complaint and arrest warrant for Jacob PERRY.

17. Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were reviewed by Assistant United States Attorney (AUSA) Marco A. Boccato and AUSA Boccato advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

S/ Caleb Michaud

_____
Caleb Michaud
Special Agent, HSI Medford

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 12:40 a.m/p.m. on 7/3/24.

_____
HONORABLE MARK D. CLARKE
United States Magistrate Judge

Page 7 – Affidavit of Caleb Michaud